JAMES COLE et als. *v.* ANDREW LANGLEY, Administrator.

A marriage which was celebrated in this State while under the dominion of Spain, may be established by reputation.

APPEAL from the District Court of the Parish of Calcasieu, *Martel*, J. *T. H. Lewis & Porter*, for plaintiffs. *J. H. & T. Overton*, for defendants and appellants.

VOORHIES, J. The only question presented for adjudication under the pleadings and evidence in this case, is the legitimacy of the plaintiffs.

The deceased, *Mary Ann Olivier*, whose estate is under administration, had three children by her connexion with *Nicolas Frugé*, and some others subsequently, after the death of *Frugé*, with *John Langley*. With regard to the lat

ter, it is admitted that they are heirs of the estate of their deceased mother and grand-mother. But it is contended by one of them, who besides being an heir, is a tutor of some of the minors and administrator of the estate, that the three children of *Nicolas Frugé* are natural children, if not bastards, their father and mother never having been married, but, as alleged, having lived in concubinage.

The testimony of the witnesses is conflicting in several particulars, as to the fact of these parties living as married persons or in concubinage ; but the weight of the evidence goes to show that they were considered as man and wife. Indeed the children took their father's name ; their mother was called *Mrs. Frugé ;* the issue were baptised as legitimate children at different intervals, in 1794, in 1796 and in 1798 ; and by these certificates of baptism it appears, not only who were the paternal and maternal grand-father and grand-mothers of these children, but that some of them officiated as God-fathers and God-mothers.

If there was still left a serious doubt as to the existence of a marriage contract between the deceased, *Nicolas Frugé* and *Mary Ann Olivier*, the testimony of *Marcantel*, one of the defendants' witnesses, would remove the doubt, although he says, that *Mary Ann Olivier* told him that she had never been married to *Frugé*. This witness states :

" He inquired of *Mary Ann Olivier* how it was that some of her children were called *Frugé* and others *Langley* ; she replied, that the *Frugés* were the children of her first husband. Witness then asked her, if she had been twice married ; she replied, no, she had been to the priest to be married, that he wanted her to confess, which she refused, *et qu'alors ils s'étaient pris sous le voile espagnol.* This conversation took place about thirteen or fourteen years ago ; can't say the time exactly."

Other witnesses state the same fact about her being married to *Frugé sous le voile espagnol ;* and it is shown that this means, " a ceremony wherein four persons hold up a white veil or covering over the parties in front of the priest, who performs the ceremony, whilst celebrating the marriage ; and it is also necessary that the priest should officiate in such marriages."

*Alexander Hébert,* who is one of the witnesses testifying to this fact, says further : that " he has heard old people say, that it was usual to pursue this course under the Spanish government." His declaration is entitled to a great deal of weight in this particular, from the fact that he once acted as groomsman at a marriage of this kind.

Now, if *Mrs. Langley* stated to *Marcantel,* that she was married to *Frugé sous le voil espagnol* (as she has stated to other persons,) it is inconsistent with the declaration that the priest would not officiate at her marriage, because she would not confess.

The mode in which the deceased's answers were elicited by this witness, and this palpable inconsistency in the answers which he says were made by her to his queries, justified the District Judge in giving no weight at all to that portion of the testimony of this witness, evidently given to disprove the marriage of *Frugé.*

From a careful examination of the evidence on record, we are of opinion that the plaintiffs have proven their legitimate filiation, not only by the certificates of baptism, of which mention is above made, but by reputation.

In the case of *Isaac Alloway* v. *Marguerite Babineau et als.,* this court said : " We agree with the District Judge, that the heirship has been established by legal evidence, it having been established by reputation, that the marriage of the plaintiff's father and mother took place whilst Louisiana was under the govern-

COLE
v.
LANGLEY.

ment of Spain. Proof of marriage by reputation was sufficient under the laws of that country." See also the cases of *Patton et als.* v. *Cities of Philadelphia and New Orleans*, 1 An. 98 ; of *Hobdy* v. *Jones*, 2 An. 944; of *Succession of Provost*, 4 An. 374 ; and of *Holmes* v. *Holmes*, 6 La. 468. See also 4 Partida, tit. 2d, law 5, p. 456 ; C. C. Arts. 212, 213, 214.

Judgment affirmed.